IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| TERRI DAVIS, | Case No.: 2:13-CV-00254-BRB-SMW |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR SEXUAL HARASSMENT, RETALIATION, AND VIOLATIONS OF NEW MEXICO COMMON LAW |
| v. | |
| TEXAS NEW MEXICO RAILROAD, IOWA PACIFIC HOLDINGS, LLC, PERMIAN BASIN RAILWAYS, INC., KURTIS LINDSEY, and MATIAS A. MORALES, | JURY TRIAL DEMANDED. |
| Defendant. | |

I.  NATURE OF THE ACTION.

1. Defendant Matias A. Morales sexually harassed Plaintiff Terri Davis throughout her employment by asking male conductors if they had sexual relations with Plaintiff Davis, making vulgar sexual remarks to Plaintiff, and requesting Plaintiff to make food for him because she is a woman. Plaintiff Davis, and other employees, reported the sexual harassment to management. Rather than investigate Plaintiff Davis' sexual harassment claim as promised, however, Defendants retaliated against Plaintiff, and then terminated her for reporting the wrongful conduct.

II.  PARTIES.

2. Plaintiff Terri Davis is a female who worked competently for Defendant Texas New Mexico Railroad ("Defendant TNMR"), Defendant Permian Basin Railways, Inc. ("Defendant PBR"), and Defendant Iowa Pacific Holdings, LLC ("Defendant Iowa Pacific") (collectively "Corporate Defendants") from approximately October 19th, 2012 to January 31st, 2013.

3. Defendant Matias A. Morales is (or was) an employee of the Corporate Defendants.

4. Defendant Matias A. Morales was a co-worker with Plaintiff Davis during her employment with the Corporate Defendants.

5. Defendant Kurtis Lindsey is a supervisor at Defendant TNMR.

6. Defendant Kurtis Lindsey was Plaintiff Davis' supervisor during her employment with the Corporate Defendants.

7. Defendant TNMR operates approximately 104 miles of railroad extending from a Union Pacific connection at Monahans, Texas to Lovington, New Mexico.

8. Plaintiff Davis worked out of Defendant TNMR's office in Eunice, New Mexico.

9. Plaintiff Davis received at least one check from Defendant PBR.

10. Plaintiff Davis received at least one check from Defendant TNMR.

11. Plaintiff Davis received a W-2 from Defendant TNMR.

12. Plaintiff Davis was terminated by Justina Del Angel, Human Resources Manager of Defendant Iowa Pacific Holdings, LLC.

13. Ms. Del Angel sent Plaintiff a letter dated January 31st, 2013 stating: "This letter is to formally inform you that your employment with Iowa Pacific Holdings – Texas New Mexico Railroad has been terminated effective immediately …"). *See* Exhibit 2 filed herewith.

14. Defendant TNMR is owned and operated by Defendant PBR.

15. Defendant PBR is a wholly-owned subsidiary of Defendant Iowa Pacific.

16. Indeed, Defendant Iowa Pacific formed Defendant PBR in part to purchase Defendant TNMR.

17. A true and accurate copy of a printout from Defendant Iowa Pacific's website is filed herewith as Exhibit 1.

18. The printout states, among other things:

> Permian Basin Railways (PBR) is a wholly-owned subsidiary of Iowa Pacific Holdings (IPH). PBR was formed in May, 2002 to purchase the Texas – New Mexico Railroad (TNMR) and the West Texas & Lubbock Railway (WTLC), collectively the Permian Basin Railways. Subsequent railroad acquisitions by IPH have been under the umbrella of PBR. (Exhibit 1 filed herewith).

19. Defendants TNMR, PBR, and Iowa Pacific are liable for all the acts of their respective employees and/or agents as herein alleged through vicarious liability, agency law, and/or respondeat superior.

20. At all relevant times herein alleged, Defendants directed, controlled, and benefited from the involvement of their respective employees and/or agents in the conduct herein alleged.

III. JURISDICTION.

21. The Court has personal jurisdiction over the Defendants, as Defendants took the retaliatory and/or tortious acts as herein alleged within this Judicial District and/or took wrongful acts having effects in this Judicial District.

22. Venue in this Court is proper because Defendants engaged in the sexual harassment, discriminatory conduct, retaliation, and/or other tortious conduct giving rise to this Complaint in New Mexico. But for Defendants' wrongful conduct and termination, Plaintiff would still be employed in New Mexico.

23. This Court has Federal Question subject matter jurisdiction under 28 U.S.C. §1331 as Plaintiff alleges Defendants violated federal law.

24. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a).

25. Plaintiff respectfully requests the Court exercise pendant jurisdiction over her state law claims, as her claims arise from a common nucleus of operative facts as do her federal statutory claims.

26. At all times relevant hereto, Plaintiff Davis was a qualified individual and employee within the meaning of the New Mexico Human Rights Act ("NMHRA") and Title VII.

27. At all times relevant hereto, the Corporate Defendants were employers within the meaning of the NMHRA and Title VII.

28. At all times relevant hereto, each Defendant was subject to the NMHRA.

29. Each Defendant supported the wrongful conduct herein alleged and took at least one affirmative act in support thereof.

30. At all times relevant hereto, Plaintiff was a qualified individual and employee within the meaning of the NMHRA and Title VII.

31. At all times relevant hereto, the Corporate Defendants were employers within the meaning of 42 U.S.C. §2000e(f).

32. At all times relevant hereto, each Defendant was subject to the NMHRA, as the NMHRA forbids "any person" from supporting a discriminatory practice. *See Sonntag v. Shaw*, 2001 NMCA 15, ¶12, 130 N.M. 238, 22 P.3d 1188.

33. Defendants are liable individually for their respective wrongful conduct under the NMHRA and/or New Mexico common law as herein alleged.

34. Plaintiff Davis was terminated under circumstances which give rise to an inference of unlawful discrimination as herein alleged.

35. Plaintiff Davis welcomed none of the wrongful conduct herein alleged and Plaintiff

found it offensive, abusive, and/or hostile, and so reported such conduct to management.

IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES.

36.     On or about February 4th, 2013, Plaintiff timely filed a Charge of Discrimination with the New Mexico Human Rights Bureau ("NMHRB") against Defendants Iowa Pacific, TNMR, Lindsey, and Morales.

37.     On or about February 17th, 2013, Plaintiff timely filed a Charge of Discrimination with the New Mexico Human Rights Bureau ("NMHRB") against Defendant PBR.

38.     On or about February 20th, 2013, Plaintiff received an Order of Non-Determination. On March 6th, 2013, Plaintiff received a second Order of Non-Determination.

39.     On March 19th, 2013, Plaintiff filed this Complaint.

40.     Accordingly, Plaintiff exhausted her administrative remedies as required by law.

V.      FACTUAL BACKGROUND TO THIS LITIGATION.

41.     Plaintiff Davis was hired by Defendants TNMR, PBR, and/or Iowa Pacific on or about October 19th, 2012.

42.     Plaintiff received a Defendant Iowa Pacific handbook.

43.     Plaintiff also received at least one check from Defendant PBR.

44.     Plaintiff also received a W-2 from Defendant Defendant Texas New Mexico Railroad.

45.     Defendants TNMR, PBR, and/or Iowa Pacific hired Plaintiff to work as an engineer based out of Defendant TNMR's office in Eunice, New Mexico.

46.     Plaintiff Davis is an experienced engineer.

47.     Indeed, Plaintiff Davis has been in the railroad industry for approximately fifteen

years.

48. During Plaintiff Davis' employment, Plaintiff received a raise from approximately $17.50/hour to approximately $20.00/hour.

49. Throughout Plaintiff Davis' employment, her co-worker, Defendant Morales, treated her worse than male employees.

50. Throughout Plaintiff Davis' employment, Defendant Kurtis Lindsey treated Plaintiff worse than male employees.

51. Soon after Plaintiff Davis began her employment, Defendant Morales told her "damn you are smoking hot."

52. During Plaintiff's employment, Defendant Morales did not tell male employees "damn you are smoking hot."

53. Plaintiff Davis informed Defendant Morales she did not approve of his comment.

54. Defendant Morales did not cease the wrongful conduct, however, and continued harassing Plaintiff Davis sexually.

55. Throughout her employment, Defendant Morales requested Plaintiff Davis to make him food because she is a woman.

56. During Plaintiff's employment, Defendant Morales did not request male employees make him food.

57. When Plaintiff Davis was assigned a new conductor, Luke Davis, Defendant Morales began asking Mr. Davis if he had "fucked" Plaintiff Davis.

58. When Defendant TNMR changed conductors, Plaintiff Davis was assigned John Lindsey as a new conductor.

59. Defendant Morales also asked Mr. Lindsey if he had sexual relations with Plaintiff Davis.

60. Plaintiff Davis told Defendant Morales she found such comments offensive.

61. At first, Plaintiff Davis did not report Defendant Morales' sexual harassment to her direct supervisor, Defendant Kurtis Lindsey, as she was afraid he would retaliate against her for so reporting.

62. Plaintiff Davis believed Defendant Lindsey would retaliate against her for reporting sexual harassment because he would scream and yell at Plaintiff, and ignore Plaintiff's phone calls.

63. Defendant Lindsey treated Plaintiff worse than he treated male employees.

64. Indeed, when Plaintiff Davis brought complaints to Defendant Lindsey, he told her she was being overly sensitive.

65. On information and belief, Plaintiff alleges Defendant Lindsey did not tell male employees they were being overly sensitive when they brought complaints to Defendant Lindsey.

66. On or about December of 2012, Plaintiff Davis reported Defendant Lindsey's wrongful conduct to the Vice President of Defendant Iowa Pacific.

67. On information and belief, Plaintiff Davis alleges the Vice President of Defendant IPH is named Mike McConville.

68. Defendants TNMR, PBR, or Iowa Pacific neither took appropriate investigation nor appropriate remedial action regarding Plaintiff's complaints against Defendant Lindsey.

69. On information and belief, Plaintiff alleges Defendants informed Defendant Lindsey of Plaintiff's reporting, as Defendant Lindsey began retaliating against Plaintiff Davis.

70. Soon after Plaintiff Davis reported Defendant Lindsey's wrongful conduct,

Defendant Lindsey reprimanded Plaintiff Davis for speeding.

71. Plaintiff Davis was given five days suspension for speeding.

72. On or about January of 2013, however, a male employee engineer pulled through a switch, causing damage to property.

73. Defendant TNMR, PBR, and/or Iowa Pacific had to pay for the damage caused by this incident.

74. The male employee who caused the incident was given a one-day suspension.

75. Plaintiff's five-day suspension for speeding reeks of discrimination/retaliation, given the male employee was only given a one-day suspension, while Plaintiff was suspended for five (5) days for similar conduct.

76. On or about January 16th, 2013, Plaintiff Davis reported Defendant Morales' sexual harassment / gender discrimination to Defendant Lindsey.

77. On or about January 16th, 2013, Plaintiff Davis also reported Defendant Morales' sexual harassment / gender discrimination to the Human Resources Department.

78. On or about January 25th, 2013, Plaintiff Davis wrote Defendant PBR's President, Edwin Ellis, and again reported Defendant Morales' sexual harassment.

79. A true and accurate copy of Plaintiff's January 25th, 2013 letter to Defendant PBR's President, Edwin Ellis, is filed herewith as Exhibit 3.

80. The letter states Plaintiff repeatedly reported Defendant Morales' wrongful conduct to her direct supervisor, Defendant Lindsey.

81. The letter also states Plaintiff was afraid of losing her job.

82. The letter also states Plaintiff was prepared to file a sexual harassment, hostile work

environment, and gender discrimination complaint with the appropriate state and federal authorities.

83. Other employees also reported Defendant Morales' wrongful conduct to management.

84. For example, Charles "Kasey" Seabolt reported Defendant Morales' wrongful conduct to Defendants.

85. A true and accurate copy of a letter dated January 22nd, 2013 from Mr. Seabolt to management is filed herewith as Exhibit 4.

86. Mr. Seabolt's letter states, among other things:

> CON. MORALES ASKED CON. LINDSEY IF HE AND ENG. DAVIS WERE, WHILE MAKING SUGGESTIVE NOISES AND GESTURES, BEING INTIMATE WHILE WORKING TOGETHER DURING THEIR SHIFT. CON. LINDSEY STATED "STRICTLY BUSINESS MAN, STRICTLY BUSINESS." AFTER WHICH CON. MORALES THEN SAID "YEAH, I CAN SEE KURTIS KICKING YOU OUT OF BED, ASKING ABOUT THE DELAY REPORT, WHAT'S WITH THE 30 MINUTE DELAY OUT OF KERMIT, ARE YOU TWO FUCKING?" (Exhibit 4 filed herewith (large cap in original)).

87. Luke Davis also reported Defendant Morales' wrongful conduct to Defendants.

88. A true and accurate copy of a letter dated January 31st, 2013, from Mr. Davis to management is filed herewith as Exhibit 5.

89. Mr. Davis' letter states it is his <u>second</u> written statement to management regarding Defendant Morales' wrongful conduct. *See* Exhibit 5 filed herewith.

90. Mr. Davis' letter states Defendant Morales regularly implied Mr. Davis and Plaintiff engaged in sexual acts on company property. *See* Exhibit 5 filed herewith.

91. In response to Plaintiff repeatedly reporting Defendant Morales' sexual harassment,

Dan Marko, Defendant Iowa Pacific's counsel, e-mailed Plaintiff Davis on or about January 18th, 2013.

92. On or about January 18th, 2013, Defendant Iowa Pacific's general counsel was Dan Marko.

93. A true an accurate copy of Mr. Marko's e-mail dated January 18th, 2013 is filed herewith as Exhibit 6.

94. In the January 18th, 2013 e-mail, Mr. Marko promised Plaintiff her claims would be investigated. *See* Exhibit 6 filed herewith.

95. Mr. Marko also stated after Defendant Iowa Pacific reviewed all information provided, Defendant would prepare a final report with its findings. *See* Exhibit 6 filed herewith.

96. Plaintiff was never provided a copy of Defendant Iowa Pacific's final report.

97. Indeed, despite Plaintiff, Mr. Davis, *and* Mr. Seabolt each reporting Defendant Morales' wrongful conduct to management, the Corporate Defendants undertook no appropriate investigation and took no appropriate remedial action.

98. Rather, Defendants retaliated against Plaintiff Davis for reporting the sexual harassment and/or wrongful conduct, and terminated Plaintiff.

99. Plaintiff Davis was terminated on or about January 31st, 2013.

100. The close proximity between Plaintiff reporting wrongful conduct as herein alleged and her termination demonstrates Defendants retaliated wrongfully against Plaintiff.

101. Plaintiff Davis' termination letter states she was terminated for creating a hostile and intimidating work environment.

102. A true and accurate copy of the termination letter is filed herewith as Exhibit 2.

103. Defendant Iowa Pacific has a policy and/or practice of progressive discipline.

104. Under Defendant Iowa Pacific's policy and/or practice, an employee is to receive a verbal warning for a first offense.

105. Under Defendant Iowa Pacific's policy and/or practice, a verbal warning should be documented and signed by the employee and the supervisor/manager.

106. Under Defendant Iowa Pacific's policy and/or practice, a copy of the verbal warning form and supporting documentation should be given to the employee.

107. Under Defendant Iowa Pacific's policy and/or practice, an employee is to receive a written warning as a second step for a repeated offense.

108. Under Defendant Iowa Pacific's policy and/or practice, an occurrence meriting a written warning must be documented and signed by the employee and supervisor/manager.

109. Under Defendant Iowa Pacific's policy and/or practice, an employee will receive an unpaid suspension as the third step for a serious offense or reoccurring infraction.

110. Defendant Iowa Pacific did not follow its progressive disciplinary policy and/or practice in terminating Plaintiff.

111. Plaintiff was not given a verbal warning for allegedly creating a hostile work environment prior to her termination.

112. Plaintiff was not provided with a copy of a verbal warning form and supporting documentation for allegedly creating a hostile work environment prior to her termination.

113. Plaintiff was not given a written warning for allegedly creating a hostile work environment prior to her termination.

114. Plaintiff did not sign a written warning for allegedly creating a hostile work

environment prior to her termination.

115. Plaintiff was not suspended for allegedly creating a hostile work environment prior to her termination.

116. Indeed, Defendants wrongfully created a "hostile work environment claim" against Plaintiff to create a basis to terminate Plaintiff for reporting sexual harassment.

117. Indeed, while the termination letter claims Plaintiff's termination was based on a "thorough investigation[,]" the letter gives no specifics of what alleged wrongful conduct Plaintiff allegedly committed or what Defendants investigated. *See* Exhibit 2 filed herewith.

118. Indeed, Plaintiff was never informed of any investigation into a hostile work environment allegation against her prior to her termination.

119. On information and belief, Plaintiff alleges Luke Davis was not interviewed as part of Defendant's investigation.

120. On information and belief, Plaintiff alleges Mr. Seabolt was not interviewed as part of Defendant's "thorough" investigation.

121. On information and belief, Plaintiff alleges John Lindsey was not interviewed as part of Defendant's "thorough" investigation.

122. Defendants' "thorough" investigation took 13 days.

123. Likewise, Plaintiff was never interviewed as part of any investigation into a hostile work environment allegation against her prior to her termination.

124. As a proximate result of Defendants' wrongful conduct as herein alleged, Plaintiff suffered economic and/or non-economic damages including, but not limited to, wrongful termination, retaliation, being subject to sexual harassment and a hostile work environment, stress,

constant worry, anxiety about the future, humiliation, belittlement, and/or loss of sleep.

125.    Defendants discriminated and/or retaliated against Plaintiff maliciously, willfully or wantonly, and/or in a manner demonstrating a reckless disregard for her rights.

FIRST COUNT
HOSTILE WORK ENVIRONMENT
IN VIOLATION OF TITLE VII

126.    Plaintiff hereby incorporates by reference each and every above mentioned paragraph of this Complaint as though fully set forth herein.

127.    Plaintiff Davis brings this Count against Defendants TNMR, PBR, and Iowa Pacific.

128.    As herein alleged, Plaintiff was subjected to harassment based on her gender.

129.    This harassment caused a hostile or abusive work environment.

130.    As herein alleged, Plaintiff was subjected to unwanted harassing conduct.

131.    The harassing conduct was so severe, widespread, or persistent that a reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

132.    Plaintiff considered the work environment to be hostile and/or abusive.

133.    Plaintiff was harmed by the harassing conduct and/or hostile work environment.

134.    Plaintiff suffered an adverse employment action, as she was terminated.

135.    Defendants had actual and/or constructive notice of the wrongful conduct herein alleged, and took no appropriate remedial action.

SECOND COUNT
HOSTILE WORK ENVIRONMENT
IN VIOLATION OF THE NMHRA

136.    Plaintiff hereby incorporates by reference each and every above mentioned paragraph

of this Complaint as though fully set forth herein.

137. Plaintiff Davis brings this Count against all Defendants.

138. As herein alleged, each Defendant encouraged, supported, participated in, and/or failed to remedy the sexual harassment against Plaintiff Davis.

### THIRD COUNT
### RETALIATION IN VIOLATION OF TITLE VII

139. Plaintiff hereby incorporates by reference each and every above mentioned paragraph of this Complaint as though fully set forth herein.

140. Plaintiff Davis brings this Count against Defendants TNMR, PBR, and Iowa Pacific.

141. Plaintiff reported sexual harassment / gender discrimination, and was terminated for so reporting.

142. Plaintiff's reporting of sexual harassment is a protected activity.

143. Plaintiff was terminated approximately six days after she last reported sexual harassment / gender discrimination.

144. Defendants' retaliatory intent may be inferred from temporal proximity: the termination closely followed Plaintiff reporting wrongful conduct.

145. Defendants never investigated Plaintiff's sexual harassment / gender discrimination reports properly.

146. Rather than investigate and remedy Plaintiff's reports of sexual harassment / gender discrimination, Defendants trumped up a false hostile work environment claim against Plaintiff, the victim of sexual harassment, in order to concoct a "legitimate" non-retaliatory reason for Plaintiff's wrongful termination.

## FOURTH COUNT
## RETALIATION IN VIOLATION OF THE NMHRA

147.   Plaintiff hereby incorporates by reference each and every above mentioned paragraph of this Complaint as though fully set forth herein.

148.   Plaintiff Davis brings this Count against Defendants Lindsey, TNMR, PBR, and Iowa Pacific.

## FIFTH COUNT
## (RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY)

149.   Plaintiff hereby incorporates by reference each and every above mentioned paragraph of this Complaint as though fully set forth herein.

150.   Plaintiff brings this Count against Defendants TNMR, PBR, and Iowa Pacific.

151.   Defendants' retaliation and wrongful termination herein described violates numerous laws as herein alleged and violates New Mexico public policy.

152.   New Mexico's public policy includes the prohibition of retaliating against those engaging in protected activity, such as reporting sexual harassment.

153.   In terminating Plaintiff as herein alleged, Defendants violated New Mexico's public policy.

154.   Defendants' wrongful conduct proximately caused Plaintiff's economic and non-economic damages, in an amount to be proved at trial.

155.   Defendant's actions, retaliation, and/or omissions as herein alleged were committed maliciously, willfully, wantonly, and/or in a manner demonstrating a reckless disregard for Plaintiff's rights.

156.   At the time Defendants terminated Plaintiff, Defendants knew or should have known

Plaintiff's reporting wrongful discrimination was protected activity.

## SIXTH COUNT
## (NEGLIGENCE)

157. Plaintiff hereby incorporates by reference each above-mentioned paragraph of this Complaint as though fully set forth herein.

158. Plaintiff brings this Count against the Corporate Defendants.

159. Defendants TNMR, PBR, and Iowa Pacific each owed a duty to Plaintiff to act as a reasonable, prudent employer and/or owner.

160. Plaintiff Davis was in a zone of danger created by the gender discrimination / sexual harassment.

161. Plaintiff, Luke Davis, and Charles Seabolt each reported Defendant Morales' sexual harassment against Plaintiff to management.

162. Defendants Lindsey, TNMR, PBR, and Iowa Pacific owed a duty to Plaintiff to investigate and take appropriate remedial action once they were on actual and/or constructive notice of gender discrimination / sexual harassment at the workplace.

163. Among others, Defendants had the duty to:

    a. not to engage in retaliation, gender discrimination, and/or sexual harassment;

    b. take reasonable measures to ensure the Corporate Defendants' sexual harassment and retaliation policies were enforced properly;

    c. fairly, adequately, and impartially investigate employees' reports of sexual harassment;

    d. take reasonable measures to remedy gender discrimination, sexual harassment,

    sexist hostility and/or to prevent such gender discrimination, sexual harassment, and/or sexist hostility from occurring and/or continuing;

  e. provide a working environment free from gender discrimination, sexual harassment, and sexist animus;

  f. take appropriate action to address gender discrimination and sexual harassment in the workplace; and,

  g. object to and/or take reasonable measures to prevent the termination of employees who report gender discrimination and sexual harassment, such as Plaintiff Davis.

 164. Defendants breached their respective duties to Plaintiff Davis in numerous ways, including, but not limited to, by:

  a. engaging in retaliation, sexual harassment and/or gender discrimination;

  b. failing to enforce properly the Corporate Defendants' policies regarding sexual harassment, retaliation, and gender discrimination;

  c. failing to investigate claims and incidents of sexual harassment and gender discrimination properly;

  d. failing to conduct proper investigations into repeated reports of gender discrimination and sexual harassment;

  e. not providing a working environment free of gender discrimination, sexual harassment, and sexist animus;

  f. failing to take appropriate remedial action once Defendants knew or should have known gender discrimination / sexual harassment was occurring in the

    workplace; and,

  g. continuing to employ and/or failing to discipline Defendant Morales for his wrongful acts herein alleged.

165. As a proximate result of Defendants' wrongful conduct as herein alleged, Plaintiff suffered damage including, but not limited to, being wrongfully terminated, suffering the indignity of being exposed to sexual harassment, stress, constant worry, anxiety about the future, and/or loss of sleep.

## VI. PRAYER FOR RELIEF.

Plaintiff respectfully prays for judgment against the Defendants respectively as alleged above as follows:

1. For all Counts as allowable by law:

  a. judgment be entered in favor of Plaintiff against the Defendants;

  b. judgment Defendants violated Plaintiff's statutory and common rights and did so willfully as herein alleged;

  c. economic and non-economic damages, in a sum according to proof at trial and as allowable by law;

  d. punitive damages and/or exemplary damages, in a sum according to proof at trial and as allowable by law;

  e. interest on judgment, including prejudgment interest and any other statutory interest, at the legal rate;

  f. any and all applicable statutory, civil penalties, and/or liquidated damages as allowable by law;

      g.      a declaratory judgment that Defendants violated Plaintiff's right to be free from discrimination, sexual harassment, and/or retaliation in the workplace;

      h.      an award to Plaintiff for compensatory damages in an amount to be shown at trial for past and future economic and non-economic losses, including emotional distress and mental anguish;

      i.      an award of reasonable attorneys' fees and costs including, but not limited to, fees awarded under Title VII (42 U.S.C. §2000e-5(k)) and/or the N.M.H.R.A. (N.M.S.A. §28-1-13(D));

      j.      injunctive relief:

            i.      ordering Defendants TNMR, PBR, and Iowa Pacific to provide training to all managers and employees in the State of New Mexico regarding Title VII, the NMHRA, and retaliation; and,

            ii.      ordering all individual Defendants attend training regarding Title VII, the NMHRA, and retaliation;

      k.      such other and further relief as the Court may deem proper.

## VII. JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: September 9, 2013.            Respectfully submitted,

                                      /s/ Electronically signed.
                                      Ben Furth
                                      benfurth64@yahoo.com
                                      **THE FURTH LAW FIRM, P.A.**
                                      780 South Walnut N. 5

        Las Cruces, New Mexico 88001
        Telephone:    575-522-3996
        Facsimile:    575-532-5815
        *Attorneys for Plaintiff*